PONCE FEDERAL SAVINGS AND LOAN ASSOCIATION OF PUERTO RICO, Appellant, *v.* THE REGISTRAR OF PROPERTY OF SAN GERMÁN, Respondent.

No. G-63-14.     Decided January 30, 1964.

*Raúl Matos* for appellant. The respondent registrar appeared by brief.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

By deed No. 191 of August 14, 1963 executed before Notary Armando Irizarry Hernández, César Nazario Borrely and his wife Concepción González constituted a voluntary mortgage on certain urban property in favor of appellant entity. The clauses of the contract which are pertinent in the decision of this appeal read as follows:

"SECOND. That Ponce Federal Savings and Loan Association of Puerto Rico, a mutual savings and loan association organized under the laws of the Federal Congress, has negotiated *a loan* [to the mortgagor] *for the amount and under the terms and conditions specified in the fifteenth paragraph hereof.*

"THIRD. *That in order to secure payment of the amount of such note and interest thereon, as per agreement, the mortgagor constitutes this mortgage* on the property described in the fourteenth paragraph hereof in favor of Ponce Federal Savings and Loan Association of Puerto Rico, its successors or assigns; *provided, that this charge shall remain in full force until the loan has been fully paid and satisfied,* with interest thereon, up to the day *final payment is tendered. In the event of judicial claim the mortgaged property shall answer for the amounts which, by way of principal, interest, attorney's fees, expenses or advancements made by the creditor, are specified in the fifth paragraph hereof."*

"FIFTEENTH. *The amounts for which the property hereinabove described is mortgaged and to which reference is made in the preceding third paragraph are the following:*

"(a) SIX THOUSAND FIVE HUNDRED DOLLARS ($6,500) by way of loan;

"(b) EIGHT HUNDRED FIFTY DOLLARS ($850) for interest, including default interest;

"(c) EIGHT HUNDRED FIFTY DOLLARS ($850) for costs, expenses, disbursements and attorney's fees in the event of foreclosure or judicial claim through any channels;

"(d) EIGHT HUNDRED FIFTY DOLLARS ($850) for any expenses or advancements made by the creditor.

"Interest shall be paid at the rate of EIGHT PERCENT (8%) ANNUALLY, and in the event of default the same rate shall be paid on any sum which may be due and unpaid on the due date thereof, whether on account of principal or of interest.

"This loan shall be payable in monthly installments of FIFTY–FOUR DOLLARS AND THIRTY–SEVEN CENTS ($54.37), commencing on the first day of October nineteen hundred and sixty-three and ending on the first day of September nineteen hundred and eighty-three. The mortgagors may pay at any time the whole or any part of the principal not due of this loan upon payment of two monthly interest payments at the rate stipulated of EIGHT PERCENT ANNUALLY." (Italics ours.)

██ A certified copy of that document was presented for registration and internal-revenue stamps in the sum of $12 paid therefor, pursuant to Number Two of the schedule of fees prescribed by Act No. 67 of June 20, 1963, 30 L.P.R.A. § 1767(a), 1 S.L.P.R. p. 594.[1] The applicant determined the value of the right to be recorded on the basis of the principal sum—$6,500—and the three items of $850 each referred to in the fifteenth clause, or a total amount of $9,050. The registrar required payment of the additional amount of $6 in order to complete the registration fees, alleging that for computation purposes the sum of interest to be taken into account was not $850 but rather $6,548.80.[2]

---

[1] "For the recording . . . . with respect to each estate or right, there shall be charged:

". . . . . . . . . .

"(b) When the value of the estate or right exceeds one thousand dollars, there shall be charged two dollars for the first one thousand dollars and one dollar additional for each one thousand dollars or fraction thereof up to one hundred thousand dollars."

[2] Since the deed stipulates monthly installments of $54.37 to pay the principal and interest within a period of 20 years, the total to be paid for those accounts would amount to $13,048.80. The amount of the principal of $6,500 is deducted from this total, leaving a balance of $6,548.80 for interest.

In view of the applicant's refusal to comply with this demand, the registrar refused to make the registration and returned the document, entering a cautionary notice for the term provided by law.

The problem comes down to a determination of the interest secured by mortgage in this fruitful credit. *Torres* v. *Fernández*, 65 P.R.R. 584 (1946), illuminating opinion of the late Mr. Justice De Jesús, sheds the necessary light. It is said at p. 589: "A logical consequence of the legal theory that the accessory follows its principal is that interest being the yield of the principal amount, if said interest is stipulated in the deed at an agreed rate, and it is so stated in the record, the interest is secured by the mortgage which guarantees the principal, *even though it has not been expressly secured.*" In that case a mortgage was constituted to secure a loan negotiated by means of a deed in which the following conditions were stipulated:

"Second: That the principal shall earn interest until fully paid at the rate of 1 per cent per month, payable at the end of each month at the domicile of the creditor, upon the condition that if default be made in three consecutive installments, the whole obligation shall become due and the creditor shall be entitled to sue for the recovery of the principal and interest.

"Term

"Third: That the amount loaned shall be reimbursed to the creditor within the term of two years counted from this date. [July 26, 1930.]

"Additional Credit

"Fourth: By mutual agreement an additional credit of five hundred dollars is fixed for interest, costs, expenses, disbursements, and attorney's fees in case of litigation, as follows: three hundred dollars for interest and two hundred dollars for costs, expenses, disbursements, and attorney's fees.

"Security

"Fifth: To secure the six thousand dollars and the five hundred dollars of the additional credit, the debtor spouses Pastoriza-

Cruz mortgage the following property in favor of Antonio Fernández Méndez."

The former district court had annulled a summary foreclosure proceeding on the ground that interest in the sum of $1,050 had been collected, when in its opinion, according to the fifth clause copied above, only the sum of $300 *had been secured by mortgage*, both as to the original debtor and to the subsequent purchaser. Mr. Justice De Jesús assumed an unequivocal position indicating that the principal mortgage which secured, by operation of the law, the principal and interest until the debt was fully paid should not be mistaken by the special mortgage which reduced the liability for interest, to the prejudice of a third person, from the two yearly payments and the current one, as required by § 114 of the Mortgage Law, to the sum of $300:

"Such interpretation overlooks the fact that the mortgage which expressly secured the principal, impliedly secured, by operation of law, the interest which the original debtor had to pay until the debt were fully paid. Consequently, it served no useful purpose to execute another mortgage to secure what the law had already secured. If we consider that, as a general rule, interest is the only inducement which moves the creditor to lend his money; and if we take into account the protection which the law affords a mortgagee by securing by mortgage all the interest stipulated—provided it is stated in the record—so long as the encumbered property belongs to the original debtor, we should not presume that the creditor has waived in part this right by reducing the security to five monthly payments of interest ($300) only, unless it clearly and unequivocally appears from the contract that it was the intention of the contracting parties to modify the standard provided by law. On the contrary, it appears from the deed itself that such was not the intention of the contracting parties, for they not only stipulated the interest for the term of the contract, but they agreed that it should be paid until the obligation were totally paid and further stipulated that if default be made in three monthly installments of interest, the creditor would be entitled to bring an action for the recovery of both principal and interest."

■ In our opinion, the same problem is present in this case in which the circumstances are very similar. The mortgage security is constituted in the third clause in order to secure the payment "of the amount of such note *and interest thereon,* as per agreement," which charge subsists *"until the loan has been fully paid and satisfied, with interest thereon, up to the day final payment is tendered."* The purpose of the reference in the fifteenth paragraph to the amounts for which the property is mortgaged, insofar as the sum of $850 "for interest, including default interest" is concerned, is none other than to reduce the liability on this account, *with prejudice to a third person,* from the two yearly payments and the current one,[3] to the specified sum of $850. According to *Díaz* v. *Quiñones,* 68 P.R.R. 232, 240 (1948), "the purpose of fixing [in the mortgage deed] a credit for interest is to protect subsequent purchasers of the property or a mortgage credit thereon"; however, as between the original parties, the security, by operation of law, covers any interest earned during the contract period. *Cf.* as to default interest, *Buil* v. *Banco Popular,* 69 P.R.R. 237 (1948), and *Piovanetti* v. *Vivaldi,* 80 P.R.R. 108 (1957).

■ On the other hand, from a reading and interpretation as a whole of all the clauses of the deed it cannot be asserted that the parties attempted to repeal the legal norm of the guarantee between them of any interest which may be earned during the subsistence of the credit. If this were so, it is necessary that it be more specifically and clearly stated.[4]

---

[3] Section 114 of the existing Spanish Mortgage Law expressly permits a covenant to the contrary on the extension of the mortgage security to cover the interest, either to eliminate, increase, or reduce it in connection with the number of yearly payments, or to substitute it by fixing a lump sum. Except that in the case of increase or fixing of a lump sum, the same may not exceed five yearly payments or the amount thereof. IV Roca Sastre, *Derecho Hipotecario* 342–45 (Bosch ed. 1954).

[4] See, also, §§ 147 and 148 of the Mortgage Law, 30 L.P.R.A. §§ 260 and 261.

The registrar is right. The decision appealed from will be affirmed.